AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

FILED _____ LODGED
_____ RECEIVED

**APR 0 8 2019**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of            )
*(Briefly describe the property to be searched*      )
*or identify the person by name and address)*      )      Case No.  MJ19-5050
Google Account lindsey.m.beveridge@gmail.com )
                                          )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Google Account lindsey.m.beveridge@gmail.com as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 841(a)(1), 18 U.S.C. 2 | Aiding and Abetting Distribution of Controlled Substance |
| Title 21, U.S.C. § 813, 841(a)(1), 802(32)(A), 18 U.S.C. § 2 | Aiding and Abetting Distribution of Controlled Substance Analogue |
| Title 21, U.S.C. § 846, 841(a)(1) and (b)(1)(C) | Conspiracy to Distribute Controlled Substance and Controlled Substance Analogue |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Kimberly Myhrer, US Postal Inspector**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ **telephone** _____ *(specify reliable electronic means)*.

Date: **4/8/19**

_____
*Judge's signature*

City and state:  Tacoma, Washington

**J. RICHARD CREATURA, U.S. MAGISTRATE JUDGE**
*Printed name and title*

2017R01040

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

### Account to be Searched

This warrant applies to information associated with the Google email account "lindsey.m.beveridge@gmail.com" (SUBJECT ACCOUNT), as well as all other subscriber and log records associated with the account, and any preserved data, which is stored at premises owned, maintained, controlled, or operated by Google Inc., an electronic communications services and remote computing services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

ATTACHMENT A - 1
USAO #: 2017R01040

**ATTACHMENT B**

**Section I: Information to be disclosed by Google for search**

To the extent that the information described in Attachments A is within the possession, custody, or control of Google, Inc., including any e-mails, records, files, logs, or information that has been deleted but is still available to Google, Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

     a.     electronic mail content and/or preserved data (including e-mail, attachments, and embedded files);

     b.     all subscriber records associated with the specified account, including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

     c.     any contact lists;

     d.     all Google Drive content and/or preserved data;

     e.     all Picasa content and/or preserved data;

     f.     all Google Groups content and/or preserved data;

     g.     all Google Chat content and/or preserved data;

     h.     all GPS, Wi-Fi, or cell tower proximity records related to the account and/or account contents;

ATTACHMENT B - 1
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        i.    account history, including any records of communications between
2  Google and any other person about issues relating to the accounts, such as technical
3  problems, billing inquiries, or complaints from other users about the specified account.
4  This to include records of contacts between the subscriber and the provider's support
5  services, as well as records of any actions taken by the provider or subscriber in
6  connection with the service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 2
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | **Section II: Information to be seized by the government**

2 |     All information described above in Section II of Attachment B that constitutes evidence,

3 | fruits, or instrumentalities of the following crime committed on or after January 15, 2014:

4 | Possession of controlled substance with intent to distribute, in violation of Title 21,

5 | United States Code, Sections 841:

6 |     a.    All email or other communications, documents, records, posts, photos, and

7 | videos related to possession and/or distribution of controlled substances and handling of

8 | the proceeds of such a crime;

9 |     b.    All messages, documents, and profile information, attachments, or other

10 | data that serves to identify any persons who use or access the account specified, or who

11 | exercise in any way any dominion or control over the specified account;

12 |     c.    Any address lists or buddy/contact lists associated with the specified

13 | account;

14 |     d.    All subscriber records associated with the specified account, including

15 | name, address, local and long distance telephone connection records, or records of

16 | session times and durations, length of service (including start date) and types of service

17 | utilized, telephone or instrument number of other subscriber number or identity,

18 | including any temporarily assigned network address, and means and source of payment

19 | for such service such as any credit card or bank account number;

20 |     e.    Any and all other log records, including IP address captures, associated

21 | with the specified account; and

22 |     j.    Any records of communications between Google and any person about

23 | issues relating to the account, such as technical problems, billing inquiries, or complaints

24 | from other users about the specified account. This is to include records of contacts

25 | between the subscriber and the provider's support services, as well as records of any

26 | actions taken by the provider or subscriber as a result of the communications.

27 |

28 |

ATTACHMENT B  - 2
ITEMS TO BE SEIZED

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | STATE OF WASHINGTON )
2 | COUNTY OF CLARK )                   ss )
3
4
5 | **I.      AFFIDAVIT OF KIMBERLY MYHRER**

6      I, Kimberly P. Myhrer, a United States Postal Inspector, having been duly sworn

7 | on oath, depose and state as follows:

8 | **II.      AFFIANT BACKGROUND AND INTRODUCTION**

9      1.      I submit this affidavit in support of an application for a search warrant

10 | authorizing the search of lindsey.m.beveridge@gmail.com (hereinafter the "SUBJECT

11 | ACCOUNT"), a Google email account more fully described in Attachment A. The

12 | SUBJECT ACCOUNT is stored at the premises controlled by Google, Inc. (hereinafter

13 | Google), an email service provider headquartered at 1600 Amphitheatre Parkway,

14 | Mountain View, California 94043. The search warrant, if granted, will be presented to

15 | Google to require it to disclose records and information described in Section I of

16 | Attachment B, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703 (c)(1)(A).

17 | Upon receipt of the records and information described in Section I of Attachment B,

18 | investigators will review them to locate and seize the items described in Section II of

19 | Attachment B.

20      2.      I am a United States Postal Inspector with the United States Postal

21 | Inspection Service (USPIS), and have been so employed since May 2015. I am currently

22 | assigned to the Prohibited Mailing Narcotics/Miscellaneous Team in Seattle,

23 | Washington, Seattle field office. My job training specializes in the investigation of the

24 | use of the U.S. mails to further facilitate illegal activities. During the course of my

25 | employment with the USPIS, I have participated in numerous criminal investigations

26 | involving illegal and non-mailable items. I have training in utilizing various means of

27 | online communication, online databases, and social media outlets for investigative

28 | purposes.

AFFIDAVIT OF KIMBERLY MYHRER - 1
USAO #: 2017R01040

3.      I am currently participating in an ongoing investigation, the focus of which is an allegation that HARLEY SKYBERG conspired with LINDSEY BEVERIDGE, a.k.a. LINDSEY MOFFIT, to knowingly distribute controlled substances, specifically synthetic cathinones, more commonly known as "bath salts," using the United States Postal Service (USPS).

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other inspectors, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the evidence set forth in this affidavit, I submit that probable cause exists to search Google email account **lindsey.m.beveridge@gmail.com** for evidence, fruits, and instrumentalities for Illegally Aiding and Abetting Distribution of Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, Illegally Aiding and Abetting Distribution of Controlled Substance Analogue, in violation of 21 U.S.C. §§ 813, 841(a)(1), 802(32)(A), and 18 U.S.C. § 2, Conspiracy to Distribute Controlled Substance and Controlled Substance Analogue, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). Specifically, as described further below, there is probable cause to believe that BEVERDIGE used the SUBJECT ACCOUNT to help SKYBERG procure controlled substances and controlled substance analogues from overseas and further distribute them in the United States.

### III.     BACKGROUND ON SYNTHETIC CATHINONES

6.      Synthetic cathinones, more commonly known as "bath salts," are human-made stimulants chemically related to cathinone, a substance found in the khat plant. Khat is a shrub grown in East Africa and southern Arabia, where some people chew its leaves for their mild stimulant effects. Human-made versions of cathinone can be much stronger than the natural product. Synthetic cathinones usually take the form of a white or brown crystal-like powder. People typically swallow, snort, smoke, or inject synthetic cathinones.

AFFIDAVIT OF KIMBERLY MYHRER - 2
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.     Synthetic cathinones have been reported to produce effects that include paranoia, hallucinations, panic attacks, and excited delirium that causes extreme agitation and violent behavior.

8.     Synthetic cathinones can be addictive. Animal studies show that rats will compulsively self-administer synthetic cathinones. Human users have reported that the drugs trigger intense, uncontrollable urges to use them again. Taking synthetic cathinones can cause strong withdrawal symptoms that include depression, anxiety, tremors, sleeping problems, and paranoia.

9.     There are different types of synthetic cathinone with varying chemical compositions. One such type of synthetic cathinone is α-Pyrrolidinopentiophenone, also known as alpha-PVP or a-PVP. Colloquially, it is sometimes called "flakka." Alpha-PVP is chemically similar to other synthetic cathinones, and takes the form of a white or pink, foul-smelling crystal that can be eaten, snorted, injected, or vaporized in an e-cigarette or similar device. Vaporizing, which sends the drug very quickly into the bloodstream, may make it particularly easy to overdose. Like other drugs of this type, alpha-PVP can cause excited delirium that involves hyperstimulation, paranoia, and hallucinations that can lead to violent aggression and self-injury. The drug has been linked to deaths by suicide as well as heart attack. It can also dangerously raise body temperature and lead to kidney damage or kidney failure. Alpha-PVP is a federally controlled Schedule I substance, effective March 7, 2014.

10.     Other types of synthetic cathinone include methylone and ethylone. Methylone is a federally controlled Schedule I substance, effective April 12, 2013; ethylone is also a federally controlled Schedule I substance, effective March 7, 2014.

11.     Synthetic cathinones are typically sold in small plastic or foil packages, sometimes with a label stating "not for human consumption," in an attempt to circumvent the Federal Analog Act, which forbids selling drugs that are substantially similar to drugs already classified for human use. While most commonly referred as or labeled "bath salts," synthetic cathinones can also be referred as and labeled "plant food," "jewelry

AFFIDAVIT OF KIMBERLY MYHRER - 3
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  cleaner," "insect repellent," and other similar such names. Drug traffickers market

2  synthetic cathinones under various brand names such as "Bliss," "Cloud Nine," "Lunar

3  Wave," "Vanilla Sky," and "White Lightning."

4  **IV.  SUMMARY OF PROBABLE CAUSE**

5      12.  SKYBERG has been known to the USPIS since 2014 for using the U.S.

6  mails to ship controlled substances. In January 2014, the USPIS began an investigation

7  on SKYBERG. Since then, the USPIS has searched and seized—pursuant to search

8  warrants—over one hundred parcels from SKYBERG containing various controlled

9  substances or substances suspected to be controlled substances. The detailed history

10  follows below.

11  **SKYBERG'S Drug Trafficking History**

12  **A.  January 2014**

13      13.  On January 15, 2014, Postal Inspector Bryce Dahlin received fifteen

14  Priority Mail Flat Rate parcels from the Postmaster for the Chehalis, Washington Post

15  Office as potentially suspicious. All fifteen parcels listed the sender as "Harley Skyberg,

16  658 Lafayette, Chehalis, WA 98532." On January 23, 2014, Inspector Dahlin received

17  consent from the intended recipient to open one of the fifteen parcels, bearing a Collect

18  On Delivery (COD) label with serial number M464377167.  Inside the parcel were four

19  individually wrapped containers containing a brown and white powdery substance.  The

20  substances were labeled "No Bull Bath Salt," "Thundercats Party Powder," and "Mr.

21  Nice Guy Powder Bath Salt."  In addition, the parcel contained a clear baggie with a

22  white powder labeled "Skull Candy."

23      14.  The USPIS obtained Federal Search Warrant MJ14-5026 on February 4,

24  2014, from U.S. Magistrate Judge Karen L. Strombom to open the remaining fourteen

25  parcels. The contents seized by Postal Inspector Dahlin from the remaining parcels were

26  sent to the Forensic Laboratory Services in Dulles, Virginia, along with the contents from

27  the parcel initially opened.  The resulting examination report from the lab indicated that

28

AFFIDAVIT OF KIMBERLY MYHRER - 4
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the parcels' contents contained methylone, ethylone, and alpha-PVP, all Schedule I

2  controlled substances.

3  **B.      April 2016**

4        15.      In April 2016, postal employees in Chehalis, Washington notified the

5  USPIS that SKYBERG was shipping suspicious parcels out of the Chehalis Post Office.

6  On April 5, 2016, Postal Inspector France Bega requested the Chehalis Post Office to

7  forward any information in its possession regarding SKYBERG.  The Chehalis Post

8  Office found an "Application for Post Office Box" from SKYBERG.  The post office

9  also informed Inspector Bega that SKYBERG had recently dropped off thirty-one

10  Priority Mail parcels to be mailed. All thirty-one parcels had COD labels.

11        16.      The USPIS detained three of the thirty-one parcels. All three parcels had

12  the same sender address of "Harley Skyberg, PO BOX 1163, Chehalis, WA 98532." On

13  April 18, 2016, the USPIS obtained Federal Search Warrant MJ16-166 from United

14  States Magistrate Judge Brian A. Tsuchida for the three parcels.

15        17.      The following items were seized from the three parcels: one pouch labeled

16  "AMPED"; five pouches labeled with the Superman logo; one pouch labeled "White

17  Water Rapid"; one round vial labeled "High Octane"; one vial labeled "Drone;" one

18  pouch labeled "Zombie eat flesh"; one round vial labeled "wicked yeti", and one pouch

19  labeled "Carpet stain remover"; five round vials labeled "snowman" and four business

20  cards advertising "www.wickedherbals.guru" with the name of "Guru Harley."

21  The contents seized from the three parcels were sent to the Forensic Laboratory Services

22  in Dulles, Virginia. On February 2, 2017, I received a report back from the lab which

23  indicated that all items tested contained alpha-PVP, with the exception of "Zombie eat

24  flesh," for which no analysis was performed.

25  **C.      May 2016**

26        18.      On May 2, 2016, postal employees forwarded suspicious Priority Mail

27  parcel 9403 3116 9900 0891 7857 73 going to Kalamazoo, MI, to Postal Inspector Mark

28  Dayhuff, Detroit Division. The parcel had a return address of "Harley Skyberg, PO Box

AFFIDAVIT OF KIMBERLY MYHRER - 5
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   1163, Chehalis, WA 98532." Postal Inspector Dayhuff contacted the recipient and
2   received consent to open the parcel. Inside the parcel were two vials of "White Water
3   Rapid - Exuberance Powder Ladybug Attractant," one vial labeled "Research Chemical,"
4   which contained a white powdery substance, and two black packages labeled "Nightfire
5   presents…carpet stain remover not for human consumption"; each black package
6   contained a vial of tan powder substance. All the substances field-tested positive for
7   alpha-PVP.

8   **D.     August 2016**

9          19.     In August 2016, I was informed by Postal Inspector Dave Heinke,
10  Philadelphia Division, that he had intercepted Priority Mail parcel 9403 3116 9900 0114
11  2620 50 with a return address of "Harley Skyberg, PO BOX 1163, Chehalis, WA 98332."
12  Postal Inspector Heinke obtained consent to open the parcel from the recipient. The
13  parcel contained three individually wrapped packets. Two of the packets were labeled
14  "Scooby Snax Potpourri," and one packet was labeled "Mad Hatter Herbal Blend." The
15  contents were sent to the Forensic Laboratory Services in Dulles, VA for analysis. On
16  May 18, 2017, I received a report back from the lab, which indicated that the contents
17  contained AB-CHMINACA, a federally controlled Schedule I substance effective
18  January 30, 2015.[1]

19  **E.     November and December 2016**

20         20.     On November 7, 2016, I was contacted by Postal Inspector Staci Johnson,
21  Pittsburg Division. Inspector Johnson received information from a confidential
22  informant that bath salts were being shipped into the area via USPS COD services.
23  Inspector Johnson intercepted a parcel from the East Freedom Post Office, East Freedom,
24  Pennsylvania based on the tip from the confidential Informant. This COD parcel 9403

25

26
_____

27  [1] AB-CHMINACA is not a synthetic cathinone. Instead, it is typically categorized as a synthetic cannabinoid, a
    human-made mind-altering chemical that is similar to chemicals found in the marijuana plant. Synthetic
28  cannabinoids are also commonly known as "K-2" or "Spice." Among others effects, synthetic cannabinoids are
    known to induce extreme anxiety, confusion, paranoia, and hallucinations.

AFFIDAVIT OF KIMBERLY MYHRER - 6
USAO #: 2017R01040

1   3116 9900 0658 7325 21, listed the sender as "Harley Skyberg, P.O. Box 919, Chehalis,

2   WA 98532." On November 14, 2016, the USPIS obtained Federal Search Warrant 16-

3   1057MJ for the parcel. Inside the parcel was an envelope labeled "Eight Ballz." Inside

4   the envelope was a vial containing a sticky brown substance. The substance was field-

5   tested positive for a synthetic drug.[2]

6       21.    On December 1, 2016, Inspector Johnson was notified by postal employees

7   at the East Freedom Post Office, East Freedom, Pennsylvania of another suspicious COD

8   parcel from "Harley Skyberg, PO BOX 919, Chehalis, WA 98532," addressed to the

9   same recipient listed on the parcel seized and searched by Inspector Johnson in

10  November 2016. This parcel, identified as Priority Mail parcel 9405 5116 9900 0491

11  3630 38, was also seized and searched pursuant to Federal Search Warrant 16-47MJ.

12  Inside the parcel were three plastic discs, each containing approximately 0.5 ounce of an

13  off-white rock-like substance. The field-test revealed that the rock-like substance was

14  alpha-PVP.

15      22.    After the search, the USPIS conducted a controlled delivery of the parcel to

16  the listed receiver's residence on the parcel in Pennsylvania. Inspector Johnson

17  interviewed the recipient of the parcel at the residence. During the interview, the recipient

18  said that the parcel came from the website "Wickedherbal.com" and he knowingly went

19  on the website to order "bath salts."

20      23.    The recipient also showed Inspector Johnson an invoice he received from

21  the website following his bath salt purchase. The invoice originated from

22  harley1skyberg@gmail.com. The invoice listed the order date, the customer's email

23  address and phone number, and items ordered. The storefront listed on the invoice was

24  http://www.wickedherbals.guru.

25

26

27

---

28  [2]This particular field test kit utilized by the investigators lacked the ability to tell what kind of synthetic drug was the substance that was being tested—it could only tell *whether* something was a synthetic drug or not.

AFFIDAVIT OF KIMBERLY MYHRER - 7
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24.     On December 12, 2016, I conducted a Google search for the website "Wickedherbal.com." Google returned a similar website "www.wickedherbals.guru". The website had multiple products listed for sale. A Google search of "where to buy legal bath salts online" returned "www.wickcedherbals.guru" twice as the search results on the first page.

25.     I reviewed the products for sale on "www.wickedherbals.guru" and found numerous products advertised as "legal bath salt." The website also advertised six products that were "coming soon." The six items were all advertised as different types of "Ultra Legal Bath Salt 1000MG."

**F.     February 2017**

26.     On February 9, 2017, I received forty-five COD Priority Mail parcels, mailed by SKYBERG and suspected to contain controlled substances, from the Kelso, WA Post Office. All forty-five parcels were addressed to different addresses throughout the country.  However, all had the same return address of "Harley Skyberg, PO BOX 675, Kelso, WA 98626."

27.     On February 13, 2017, I received one additional COD Priority Mail Flat Rate parcel M477167997, suspected of containing controlled substances.  The parcel was intercepted in transit in Duncansville, Pennsylvania, and was given to the USPIS as suspicious.  The parcel had a return address of "Harley Skyberg, PO BOX 919, Chehalis, WA 98532."

28.     The USPIS obtained Federal Search Warrant MJ17-049 on February 16, 2017 from United States Magistrate Judge Brian A. Tsuchida for these forty-six parcels. The contents inside the parcels either were identical to or closely resembled the contents of the previously seized parcels from SKYBERG that had been tested to contain controlled substances.

29.     On February 12, 2017, I went to www.wickedherbals.guru and captured images of items sold on the website.  Some of the items being advertised on the website were items that had been previously seized by Postal Inspectors and tested positive for

AFFIDAVIT OF KIMBERLY MYHRER - 8
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    controlled substances. These items included "White Water Rapid Exuberance Powder,

2    Ladybug Attractant .5G," "Amped Exuberance Powder Ladybug Attractant .5G," and

3    "Ultra Premium High Octane Research Chemical 500MG."

4    **G.      SKYBERG's Bitcoin Alpha-PVP Purchase**

5           24.      In March 2018, I obtained from Coinbase records associated with a

6    Coinbase account owned by SKYBERG, User ID 59078b05cd453c0f0ce40573. Coinbase

7    is an online digital currency exchange that allows its users to buy, sell, store, and transfer

8    a number of cryptocurrencies, including Bitcoin.

9           25.      A review of the account's transaction records revealed that on June 23,

10   2017, SKYBERG, on three separate occasions, sent approximately 0.74, 0.74, and 0.81

11   Bitcoin to the same recipient.  There was a corresponding note for each transaction. The

12   first transaction was accompanied with a note saying "Harley apvp order 3 ki." The

13   second and third transactions were accompanied with an identical note saying "harley's

14   apvp order." The value of Bitcoin transferred for each transaction was $2,002.37,

15   $2,002.37, and $2,202.37 at the time of the transaction, respectively.

16   **H.      Undercover Buy**

17          26.      On March 26, 2018, Postal Inspector Nelson Rivera and I visited

18   www.wickedherbals.guru. The website was still active. On the same day, I conducted an

19   undercover buy from www.wickedherbals.guru and ordered one "WICKEDPLATTER:

20   Wicked sampler platter 8 units research chemicals for $169.99" and one "GOGAINE:

21   GOGAINE Research Chemical Powder 500MG."  After ordering, I received an invoice

22   from harley1skyberg@gmail.com. The invoice had a subject line that read "Order

23   Confirmation Notice" and contained the invoice number, order date, payment, and items

24   ordered. At the bottom of the invoice, there was a note saying that a customer could

25   check the status of his or her order by visiting

26   http://www.wickedherbals.guru/myaccount.sc.

27          27.      To this date, www.wickedherbals.guru is still active and markets items

28   suspected to contain controlled substances.

AFFIDAVIT OF KIMBERLY MYHRER - 9
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**SKYBERG's Relationship with BEVERDIGE**

27.     The USPIS became aware of BEVERIDGE in 2016. As described above, in 2016, SKYBERG shipped or attempted to ship multiple parcels that contained controlled substances and listed PO Box 1163, Chehalis, WA 98532 as the return address for those parcels. According to the postal records associated with that PO Box, it was BEVERIDGE who applied for the PO Box. On the application, SKYBERG was listed as the only other authorized user of the PO Box.

28.     Also in August 2016, an undercover USPIS agent pretending to be SKYBERG's friend exchanged online messages with BEVERIDGE through Facebook Messenger. BEVERIDGE told the undercover agent that SKYBERG was living with her in her trailer and that she worked for SKYBERG.

29.     Additionally, in March 2018, the USPIS received records associated with SKYBERG from a commercial storage company called Northwest Self Storage to which SKYBERG had made payments from his bank account. Listed as an alternative contact for the storage unit SKYBERG started renting out in December 2016 was "Lindsey Bevarge." It is common for drug traffickers to utilize a commercial storage unit to facilitate their drug trafficking activities. Such a storage location, for example, could be used as a "stash" location or a place where drugs are packaged and processed for further distribution.

30.     A search of law enforcement databases for Lindsey BEVERIDGE revealed that she had used an alias of Lindsey M. MOFFITT in the past. The law enforcement databases listed the same social security number for BEVERIDGE and MOFFITT.

**Email Communications among SKYBERG, BEVERIDGE, and Potential Suppliers of Controlled Substances**

31.     In June 2018, USPIS investigators obtained a search warrant authorizing the search of harley1skyberg@gmail.com. In August 2018, I received a return from Google and reviewed the emails sent and received by harley1skyberg@gmail.com. Included in the return were approximately 2,000 emails titled "New Order Notice," which

AFFIDAVIT OF KIMBERLY MYHRER - 10
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   contain details about orders received by SKYBERG via www.wickedherbals.guru, such

2   as invoice number, order date, and customer contact information.

3       32.     Also included in the return were SKYBERG's email communications with

4   office@dharmachem.org during 2017. In those email communications, SKYBERG was

5   seen discussing how to order alpha-pvp and other controlled substances such as synthetic

6   cannabinoid from office@dharmachem.org. In one email to office@dhparmachem.org,

7   SKYBERG attached three images, which were screenshots showing the aforementioned

8   bitcoin payments for alpha-pvp, suggesting that office@dharmachem.org is the email

9   account being used by the potential supplier who received the bitcoin payments from

10  SKYBERG.

11      33.     A Google search reveals that dharmachem.org is frequently mentioned as a

12  supplier of "research chemicals" by internet users on a website such as Reddit. A

13  similarly-named, China-based company "dharmachems.com" was also accused as a

14  supplier of acetylfentanyl, an analog of fentanyl, by the World Health Organization

15  (WHO) Expert Committee on Drug Dependence in 2015.[3]

16      34.     There were also multiple emails exchanged between

17  harley1skyberg@gmail.com and lindsey.m.beveridge@gmail.com, and

18  harley1skyberg@gmail.com and lindseymmoffitt@outlook.com. One such email sent

19  from harley1skyberg@gmail.com to lindsey.m.beveridge@gmail.com in December 2016,

20  titled "Bit Pay," which is a well-known bitcoin payment-processing website, contained

21  two screenshot attachments. The first screenshot showed a confirmation for a bitcoin

22  payment transaction for 2.5142 (BTC), which, at the time, was equivalent to $1,939.99

23  USD. The confirmation was accompanied by a note stating "for harley's RC order."[4] The

24  second screenshot similarly showed a confirmation for a bitcoin payment transaction for

25

26

---

27  [3] Expert Committee on Drug Dependence, World Health Organization, Acetylfentanyl Critical Review Report (Nov.
    2015), http://www.who.int/medicines/access/controlled-substances/5.2_Acetylfentanyl_CRev.pdf.

28  [4] RC is a commonly used acronym for "research chemical," which is yet another common nickname for various
    synthetic cathinones.

AFFIDAVIT OF KIMBERLY MYHRER - 11
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | 2.3070 (BTC), which, at the time, was equivalent to $1,799.99 USD. This confirmation
2 | was also accompanied by a note stating "HARLEYS ORDER; 4F-PHP 500G
3 | MEXEDRONE 100G MMB-CHMINACA 100G." MMB-CHMINACA, also known as
4 | MDMB-CHMICA, is a Schedule I controlled substance.

5 | 35.     In other emails forwarded from lindseymmoffitt@outlook.com to
6 | harley1skyberg@gmail.com in 2017, the account holder of
7 | lindseymmoffitt@outlook.com was seen ordering large quantities of baggies and other
8 | items that appear to be associated with controlled substances from a China-based
9 | company called Sourcepak on multiple occasions. In particular, in one of those emails,
10 | the account holder of lindseymmoffitt@outlook.com discussed ordering "White Tiger
11 | 800;" in another email, the account holder discussed potentially ordering 4,000 bags of
12 | "Charles .5g" and another 4,000 bags of "Charles 1g." USPIS investigators have seized
13 | multiple parcels from SKYBERG that contained suspected substances packaged in
14 | baggies. USPIS investigators have also seized parcels from SKYBERG containing
15 | packages labeled White Tiger and Charles.

16 | 36.     A product named "White Tiger" had previously been seized from a parcel
17 | sent by SKYBERG and tested by the USPIS forensic laboratory. According to the
18 | examination report dated August 31, 2018, "White Tiger" contained FUB-AMB. I
19 | conducted an open source search of FUB-AMB and found a publication titled "Critical
20 | Review Report: FUB-AMB," authored by the World Health Organization (WHO) Expert
21 | Committee on Drug Dependence in November 2018.[5] According to the report, FUB-
22 | AMB is a synthetic cannabinoid.

23 | **Surveillance of SKYBERG**

24 | 37.     I conducted surveillance on July 27, 2018, at SKYBERG'S mobile home,
25 | which was then located at a RV park in Castle Rock, Washington. I saw a dark-colored

26 |

27 | _____
28 | [5] *See* Expert Committee on Drug Dependence, World Health Organization, Critical Review Report: FUB-AMB (Nov. 2018), https://www.who.int/medicines/access/controlled-substances/Fub_amb.pdf.

AFFIDAVIT OF KIMBERLY MYHRER - 12
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Subaru with Washington license plate AVU5235, which belonged to BEVERIDGE,

2   parked outside SKYBERG's mobile home. At around 11:08 a.m., I saw SKYBERG

3   exiting his mobile home and entering the Toyota FJ Cruiser. The FJ Cruiser left the RV

4   park and entered southbound I-5. The FJ Cruiser then stopped at a gas station.

5   SKYBERG got out of the car and went into the gas station before returning to the car

6   again. The FJ Cruiser reentered southbound I-5, at which point I lost the vehicle.

7        **2703(d) ORDER RETURN FOR LINDSEY.M.BEVERIDGE@GMAIL.COM**

8        38.    On November 6, 2018, the government applied and obtained a 2703(d)

9   Order for both lindsey.m.beveridge@gmail.com and lindseymmoffitt@outlook.com from

10   United States Magistrate Judge David W. Christel.

11       39.    On November 8, 2018, Google responded to the 2703(d) Order. USPIS

12   investigators reviewed the return and found a number of emails exchanged between

13   harley1skyberg@gmail.com to lindsey.m.beveridge@gmail.com in 2017 and 2018.

14       40.    USPIS investigators also discovered at least five emails that were delivered

15   simultaneously from unknown individuals to both lindsey.m.beveridge@gmail.com and

16   payments@wickedherbals.guru between April 2017 and July 2017.

17       41.    In addition, an email from news@chinglabs.com was delivered to

18   lindsey.m.beveridge@gmail.com on April 20, 2017. An open source search of Ching

19   Labs showed a Facebook page of the company with a description that says: "Our

20   products are not offered for human consumption. Highest quality guarantee" and the

21   website of https://chinglabs.com. The picture on the Ching Labs Facebook page also had

22   a caption: "Ching Labs: Chinese Research Chemical Vendor."

23       42.    Ching Labs was also a subject of a media investigation by NBC News.[6]

24   According to a news story published by NBC Nightly News in August 2017, an NBC

25   journalist googled "buy fentanyl" and Ching Labs was the first company that appeared on

26

27   _____

28   [6] Buying Opioids Online: A Look Into The Thriving Industry, NBC Nightly News (Aug. 14, 2017), *available at* https://www.youtube.com/watch?v=FZUoyn3IHWU.

AFFIDAVIT OF KIMBERLY MYHRER - 13
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the search result page. The journalist, using an alias "Richard Stevens," then sent an
2  online message to Ching Labs, which said: "I am interested in getting fentanyl sent to us
3  in the United States." Within minutes, the journalist received an email response from
4  Ching Labs, which sad: "Hello, we have a very potent fentanyl analogue, very similar in
5  potency to the original. We ship to USA. We only accept bitcoin as payment method."

6       43.    The journalist then followed up with another email, which said: "Is it
7  possible to get it to me without it being taken by U.S. customs?" Again, within minutes,
8  the journalist received an email response, which said: "We provide a reship guarantee,
9  also we ship using ingenious packaging. My name is Sarah, nice meeting you, Mr.
10  Richard :)"

11       44.    The journalist sent another follow up email: "That is great news, Sarah.
12  Would you be willing to send me a picture of the packaging?" Approximately ten
13  minutes later, the journalist received an email with a picture describing the typical
14  packaging of fentanyl.

15       **2703(d) ORDER RETURN FOR LINDSEYMMOFFITT@OUTLOOK.COM**

16       45.    On December 10, 2018, Microsoft responded to the 2703(d) Order. UPSIS
17  investigators reviewed the return and found an email sent from
18  nwss79@nwselfstorage.com to lidnseymmoffitt@outlook.com on February 2, 2018. As
19  noted above, the USPIS had received records associated with SKYBERG from Northwest
20  Self Storage and discovered that a person by the name of "Lindsey Bevarge" was listed
21  as an alternative contact for the storage unit SKYBERG started renting out in December
22  2016.

23       46.    USPIS investigators also discovered multiple emails exchanged between
24  lindseymmoffitt@outlook.com and chinglabs575@gmail.com, which belonged to "Sarah
25  Zhang," from August 2016 to December 2016. As noted above, Ching Labs is a known
26  source of controlled substances and controlled substance analogues in China, and an
27  individual named "Sarah" appears to have facilitated the distribution of such analogues
28

1  on behalf of Ching Labs. The email address of chinglabs575@gmail.com is also listed on

2  Ching Labs' Facebook page.

3      47.     Further, USPIS investigators discovered multiple emails exchanged

4  between lindseymmoffitt@outlook.com and rory@sourcepack.com.cn, which belonged

5  to "Rory Yang," April 2016 to March 2018. As noted above, Sourcepack is a China-

6  based company that appears to have supplied packaging materials for controlled

7  substance and controlled substance analogues SKYBERG distributes.

8         V.     **BACKGROUND REGARDING GOOGLE'S SERVICES**

9      48.     In my training and experience, I have learned that Google provides a

10 variety of on-line services, including electronic mail ("e-mail") access, to the general

11 public.  Google allows subscribers to obtain e-mail accounts at the domain name

12 gmail.com, like the e-mail account listed in Attachment A.

13     49.     Subscribers obtain an account by registering with Google.  When doing so,

14 e-mail providers like Google ask the subscriber to provide certain personal identifying

15 information.  This information can include the subscriber's full name, physical address,

16 telephone numbers and other identifiers, alternative e-mail addresses, and, for paying

17 subscribers, means and source of payment (including any credit or bank account number).

18 In my training and experience, such information may constitute evidence of the crimes

19 under investigation because the information can be used to identify the account's user or

20 users, and to help establish who has dominion and control over the account.

21     50.     E-mail providers typically retain certain transactional information about the

22 creation and use of each account on their systems.  This information can include the date

23 on which the account was created, the length of service, records of log-in (*i.e.,* session)

24 times and durations, the types of service utilized, the status of the account (including

25 whether the account is inactive or closed), the methods used to connect to the account

26 (such as logging into the account via Google's website), and other log files that reflect

27 usage of the account.  In addition, e-mail providers often have records of the Internet

28 Protocol address ("IP address") used to register the account and the IP addresses

AFFIDAVIT OF KIMBERLY MYHRER - 15
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  associated with particular logins to the account. Because every device that connects to

2  the Internet must use an IP address, IP address information can help to identify which

3  computers or other devices were used to access the e-mail account, which can help

4  establish the individual or individuals who had dominion and control over the account.

5      51.   In general, an e-mail that is sent to a Google subscriber is stored in the

6  subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail. If the

7  subscriber does not delete the message, the message can remain on Google servers

8  indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on

9  Google's servers for a certain period of time.

10     52.   When the subscriber sends an e-mail, it is initiated at the user's computer,

11 transferred via the Internet to Google's servers, and then transmitted to its end

12 destination. Google often maintains a copy of the e-mail sent. Unless the sender of the

13 e-mail specifically deletes the e-mail from the Google server, the e-mail can remain on

14 the system indefinitely. Even if the sender deletes the e-mail, it may continue to be

15 available on Google's servers for a certain period of time.

16     53.   A sent or received e-mail typically includes the content of the message,

17 source and destination addresses, the date and time at which the e-mail was sent, and the

18 size and length of the e-mail. If an e-mail user writes a draft message but does not send

19 it, that message may also be saved by Google but may not include all of these categories

20 of data.

21     54.   A Google subscriber can also store files, including e-mails, address books,

22 contact or buddy lists, calendar data, photographs, and other files, on servers maintained

23 and/or owned by Google. In my training and experience, evidence of who was using an

24 e-mail account may be found in address books, contact or buddy lists, e-mail in the

25 account, attachments to e-mails, including photographs and files, and photographs and

26 files stored in relation to the account.

27     55.   A subscriber to a Google Gmail account can also store files, including

28 address books, contact lists, calendar data, photographs and other files, on servers

AFFIDAVIT OF KIMBERLY MYHRER - 16
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  maintained and/or owned by Google.  For example, Google offers users a calendar

2  service that users may utilize to organize their schedule and share events with others.

3  Google also offers users' a service called Google Drive that may be used to store data and

4  documents.  The Google Drive service may be used to store documents including

5  spreadsheets, written documents (such as Word or Word Perfect) and other documents

6  that could be used to manage a website.  Google Drive allows users to share their

7  documents with others or the public depending on the settings selected by the account

8  holder.  Google also provides its users with access to the photo storage service "Picasa."

9  Picasa can be used to create photo albums, store photographs, and share photographs with

10 others.  Another Google service called "You Tube" allows users to view, store and share

11 videos.  Google also provides a service called "Google Analytics.  Google Analytics is a

12 Google service that monitors website traffic and provides subscribers with data relating to

13 how much traffic is visiting the subscriber's website, which sections of the subscriber's

14 website users are visiting, how long users are staying on particular sections of the site,

15 and the geographical source of users visiting the website, among other things.

16      56.     In some cases, e-mail account users will communicate directly with an e-

17 mail service provider about issues relating to the account, such as technical problems,

18 billing inquiries, or complaints from other users.  E-mail providers typically retain

19 records about such communications, including records of contacts between the user and

20 the provider's support services, as well records of any actions taken by the provider or

21 user as a result of the communications.  In my training and experience, such information

22 may constitute evidence of the crimes under investigation because the information can be

23 used to identify the account's user or users.

24      57.     According to Google's website, "Location Reporting" allows Google to

25 periodically store and use a device's most recent location data in connection with the

26 Google Account connected to the device. "Location History" allows Google to store a

27 history of location data from all devices where a user is logged into their Google Account

28 and have enabled Location Reporting.  According to Google "[w]hen you turn on

AFFIDAVIT OF KIMBERLY MYHRER - 17
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Location Reporting for a device like your iPhone or iPad, it lets Google periodically store

2   and use that device's most recent location data in connection with your Google Account."

3   How often Location Reporting updates location data is not fixed. Frequency is

4   determined by factors such as how much battery life the device has, if the device is

5   moving, or how fast the device is moving. Google's location services may use GPS, Wi-

6   Fi hotspots, and cellular network towers to determine an account holder's location.

7         58.    Based on the above, I know that if user of harley1skyberg@gmail.com

8   utilizes a mobile device to access this Gmail account and has not disabled location

9   services on his device/s or through his Google account settings, Google may have

10   detailed records of the locations at which the account holder utilized his mobile devices.

11   This type of evidence may further assist in identifying the account holder, and lead to the

12   discovery of other evidence of the crimes under investigation.

13   **VI.    INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

14         59.    Pursuant to Title 18, United States Code, Section 2703(g), this application

15   and affidavit for a search warrant seeks authorization to permit Google, and its agents and

16   employees, to assist agents in the execution of this warrant.  Once issued, the search

17   warrant will be presented to Google with direction that it identify the Google account

18   described in Attachment A to this affidavit, as well as other subscriber and log records

19   associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

20         60.    The search warrant will direct Google to create an exact copy of the

21   specified account and records.

22         61.    I, and/or other law enforcement personnel will thereafter review the copy of

23   the electronically stored data, and identify from among that content those items that come

24   within the items identified in Section II of Attachment B, for seizure.

25         62.    Analyzing the data contained in the forensic image may require special

26   technical skills, equipment, and software.  It could also be very time-consuming.

27   Searching by keywords, for example, can yield thousands of "hits," each of which must

28   then be reviewed in context by the examiner to determine whether the data is within the

AFFIDAVIT OF KIMBERLY MYHRER - 18
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  scope of the warrant.  Merely finding a relevant "hit" does not end the review process.

2  Keywords used originally need to be modified continuously, based on interim results.

3  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords,

4  search text, and many common e-mail, database and spreadsheet applications do not store

5  data as searchable text.  The data may be saved, instead, in proprietary non-text format.

6  And, as the volume of storage allotted by service providers increases, the time it takes to

7  properly analyze recovered data increases, as well.   Consistent with the foregoing,

8  searching the recovered data for the information subject to seizure pursuant to this

9  warrant may require a range of data analysis techniques and may take weeks or even

10  months.  All forensic analysis of the data will employ only those search protocols and

11  methodologies reasonably designed to identify and seize the items identified in Section II

12  of Attachment B to the warrant.

13        63.      Based on my experience and training, and the experience and training of

14  other agents with whom I have communicated, it is necessary to review and seize a

15  variety of e-mail communications, chat logs and documents, that identify any users of the

16  subject account and e-mails sent or received in temporal proximity to incriminating e-

17  mails that provide context to the incriminating communications.

18              **VII.   REQUEST FOR NONDISCLOSURE AND SEALING**

19        64.      The government requests, pursuant to the preclusion of notice provisions of

20  Title 18, United States Code, Section 2705(b), that Google be ordered not to notify any

21  person (including the subscriber or customer to which the materials relate) of the

22  existence of this warrant for such period as the Court deems appropriate.  The

23  government submits that such an order is justified because notification of the existence of

24  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

25  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

26  notify confederates, or flee or continue his flight from prosecution.

27        65.      It is further respectfully requested that this Court issue an order sealing,

28  until further order of the Court, all papers submitted in support of this application,

AFFIDAVIT OF KIMBERLY MYHRER - 19
USAO #: 2017R01040

1  including the application and search warrant.  I believe that sealing this document is

2  necessary because premature disclosure of the contents of this affidavit and related

3  documents may have a significant and negative impact on the continuing investigation

4  and may severely jeopardize its effectiveness for the same reasons stated above.

5                                   **VIII.  CONCLUSION**

6          66.       Based on the forgoing, I request that the Court issue the proposed search

7  warrant.  This Court has jurisdiction to issue the requested warrant because it is "a court

8  of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a),

9  (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . .

10  that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

11  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

12  required for the service or execution of this warrant.  Accordingly, by this Affidavit and

13  Warrant I seek authority for the government to search all of the items specified in Section

14  I of Attachment B to the Warrant, and specifically to seize all of the data, documents and

15  records that are identified in Section II of Attachment B.

16

17

18  _____

19  KIMBERLY P. MYHRER
    U.S. Postal Inspector, USPIS

20

21          The above-named agent provided a sworn statement attesting to the truth of the

22  contents of the foregoing affidavit on _____8_____ day of April, 2019.

23

24

25  J. RICHARD CREATURA
    United States Magistrate Judge

26

27

28

AFFIDAVIT OF KIMBERLY MYHRER - 20
USAO #: 2017R01040

## **ATTACHMENT A**

### **Account to be Searched**

This warrant applies to information associated with the Google email account "lindsey.m.beveridge@gmail.com" (SUBJECT ACCOUNT), as well as all other subscriber and log records associated with the account, and any preserved data, which is stored at premises owned, maintained, controlled, or operated by Google Inc., an electronic communications services and remote computing services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

## **ATTACHMENT B**

### **Section I: Information to be disclosed by Google for search**

To the extent that the information described in Attachments A is within the possession, custody, or control of Google, Inc., including any e-mails, records, files, logs, or information that has been deleted but is still available to Google, Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

      a.    electronic mail content and/or preserved data (including e-mail, attachments, and embedded files);

      b.    all subscriber records associated with the specified account, including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

      c.    any contact lists;

      d.    all Google Drive content and/or preserved data;

      e.    all Picasa content and/or preserved data;

      f.    all Google Groups content and/or preserved data;

      g.    all Google Chat content and/or preserved data;

      h.    all GPS, Wi-Fi, or cell tower proximity records related to the account and/or account contents;

ATTACHMENT B - 1
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      account history, including any records of communications between
Google and any other person about issues relating to the accounts, such as technical
problems, billing inquiries, or complaints from other users about the specified account.
This to include records of contacts between the subscriber and the provider's support
services, as well as records of any actions taken by the provider or subscriber in
connection with the service.

ATTACHMENT B - 2
USAO #: 2017R01040

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Section II: Information to be seized by the government

All information described above in Section II of Attachment B that constitutes evidence, fruits, or instrumentalities of the following crime committed on or after January 15, 2014: Aiding and Abetting Distribution of Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, Aiding and Abetting Distribution of Controlled Substance Analogue, in violation of 21 U.S.C. §§ 813, 841(a)(1), 802(32)(A), and 18 U.S.C. § 2, Conspiracy to Distribute Controlled Substance and Controlled Substance Analogue, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C):

a. All email or other communications, documents, records, posts, photos, and videos related to possession and/or distribution of controlled substances and handling of the proceeds of such a crime;

b. All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

c. Any address lists or buddy/contact lists associated with the specified account;

d. All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number of other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service such as any credit card or bank account number;

e. Any and all other log records, including IP address captures, associated with the specified account; and

f. Any records of communications between Google and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account. This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

ATTACHMENT B - 2
ITEMS TO BE SEIZED

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970